Houghton and others vs. The First National Bank of Elkhorn, impleaded, etc.

---

HOUGHTON and others vs. THE FIRST NATIONAL BANK OF ELKHORN, impleaded, etc.

PROMISSORY NOTE—INDORSEMENT—NOTICE: (1, 2.) *Form and circumstances of indorsement by cashier, binding upon bank.* (3.) *When his representations will bind it.* (4.) *Notice of irregularity in indorsement.*

1. The words " A. B., Cas." indorsed upon a note, *held* sufficient *in form* to bind the bank of which A. B. was cashier.
2. Such indorsement, although made upon a note not belonging to the bank, and merely for the accommodation of the payee or prior indorser, will bind the bank as against a purchaser in good faith, for value, before maturity.
3. Representations by a bank cashier need not be made at the counter or office of the bank in order to bind it.
4. The fact that a note purporting to have been made in Michigan and indorsed by a bank in Elkhorn in this state, was offered to the plaintiff at Milwaukee a day or two after its date, was not notice that it could not have passed through said bank in the regular course of business, so as to prevent plaintiffs from being innocent purchasers, especially when they inquired of the cashier before purchasing, and were told that it was " all right."

APPEAL from the Circuit Court for *Milwaukee* County.

Action on a promissory note for $1,005.19, at two months, made by Eugene Costigan, June 23, 1869, at Pentwater, Mich., payable to the order of Wadsworth, Adams & Co., of Milwaukee in this state, at the Merchants' National Bank in said last mentioned city, and alleged to have been indorsed by the payees to the defendant bank (located and doing business at Elkhorn in this state), and by it to one Chase, and by him to plaintiffs. Due presentment, with non-payment and notice to the defendant bank are averred. Costigan did not answer. The answer of the defendant bank denies that the note was ever indorsed to or by it, or that it ever owned or possessed the same, or was in any wise a party thereto; and avers that the note was indorsed by one Buckley, for the accommodation of Wadsworth, Adams & Co., and that neither Chase nor the plaintiffs purchased it in good faith, or in the usual course of business for full value, but that each purchased it at a rate of discount greatly exceeding lawful interest for the time it had to run, with full notice and knowledge that it had not been indorsed by or for defendant.

The court found that the note was indorsed by Wadsworth, Adams & Co., the payees, and that on the 24th of June, 1869, George Buckley, then cashier of the defendant bank, at Racine in this state, indorsed the notice, adding to his name " Cas.," and left said note in the hands of the payees; that his indorsement was made without consideration, and at the request and for the accommodation of the payees, and the defendant bank never owned nor negotiated it, or had any interest in it; that a few days after said indorsement by Buckley, the payees, at Milwaukee, transferred the note to Chase at a discount of one and a half or two per cent. per month for the time it had to run, and Chase left it with the plaintiffs for dis-

count; that before plaintiffs purchased it, said Buckley, at Milwaukee, in answer to inquiries made by one of the plaintiffs, said that his (Buckley's) indorsement as cashier was all right, that the defendant bank had security for the payment of the note, and it would be paid; and that thereafter plaintiffs purchased the note at a discount of one and a half or two per cent. per month for the time it had to run, Chase indorsing it " without recourse."

On these facts the court held that Buckley's indorsement was not binding upon the bank, and rendered judgment for the latter; from which the plaintiffs appealed.

*Carpenter & Murphy* (with *E. Mariner*, of counsel), for appellants, argued that the indorsement was made in the manner universally in use for bank indorsements, and was in law the indorsement of the defendant bank (*Lafayette Bank v. State Bank*, 4 McLean, 208; *Bank of Genesee v. Patchin Bank*, 13 N. Y. 309, and 19 id. 312; *Burnham v. Webster*, 19 Me. 232; *Robb v. Bank*, 41 Barb. 586; *Bank of N. Y. v. Muskingum Bank*, 29 N. Y. 619; *Mechanics' Bank v. White Lead Co.*, 35 id. 505; *Bank of the State v. Wheeler*, 21 Ind. 90; *State Bank of Ohio v. Fox*, 3 Blatch. 431; *Baldwin v. Bank*, 1 Wall. 234); that the indorsement of notes for the use of a bank falls within the ordinary duties of the cashier, and plaintiffs, in purchasing without notice (especially after the precaution used by them), had a right to regard this indorsement as within the ordinary powers of the cashier (*Fleckner v. U. S. Bank*, 8 Wheat. 339; *North River Bank v. Aymar*, 3 Hill, 262; *Farmers' etc., Bank v. Butchers', etc., Bank*, 16 N. Y. 137); that a bank having the right to indorse a note for the purpose of discount or re-discount (19 N. Y. 312), where a note is indorsed in due form by the proper officer, a purchaser, without notice, has a right to presume that it was indorsed for a lawful purpose (*Blunt v. Walker*, 11 Wis. 334; *Cornell v. Hichens*, id. 369; 16

N. Y. 125); that this note was in fact indorsed for the benefit of the bank, the proceeds to be used in taking up paper which the bank had procured to be re-discounted; that the purchase by plaintiffs at a greater rate of discount than lawful interest is no proof of *mala fides* (*Williams v. Tilt*, 36 N. Y. 319; *Brown' v. Penfield*, id. 473; 14 Wis. 571); and that the bank was estopped by Buckley's representations to the plaintiffs, from alleging that this was accommodation paper (*Fleckner v. U. S. Bank*, 8 Wheat. 339; *State Bank v. Wheeler*, 21 Ind. 90).

*Conger & Sloan*, for respondent, contended that while a cashier, without any express authority to indorse, may bind his bank by indorsement of *paper owned by it*, no liability of indorser can be created against a bank by indorsement of paper not owned by it, for the mere accommodation of another, however the indorsement may be made (Edwards on B. & N. 349; *Marvine v. Hymers*, 2 Kern. 227; *Bank of Genesee v. Patchin Bank*, 3 id. 314); that the acts of the cashier, to be binding upon the bank, must be done in the ordinary course of his duties (*Bank of U. S. v. Dunn*, 6 Pet. 51; *U. S. v. City Bank*, 21 How. 356); that if there is any exception to this rule in favor of *bona fide* purchasers for value without notice, such exception does not apply to a case like this, where the paper bears no evidence to connect the bank with it in any manner, and where the bank had in fact no interest in it, and the cashier indorsed without consideration or authority (*Stackpole v. Arnold*, 11 Mass. 27; *Bank of State of N. Y. v. Farmers' Branch, etc.*, 36 Barb. 332); that even if it should be held that the indorsement was sufficient *in form* as that of the bank, still, when it is shown to have been made without authority, it does not bind the bank (*North River Bank v. Aymar*, 3 Hill, 262, opinion of NELSON, C. J.; 13 N. Y. 634; 14 id. 631; Opinion of COMSTOCK, J., in *F. & M. Bank v. B. & D. Bank*, 16 id. 125); that the

bank was not bound by Buckley's representations subsequently made to the plaintiffs : first, because the representation was false, and made in regard to a matter as to which the cashier had no authority to act ; secondly, because it was made in reference to paper which plaintiffs knew was never owned by defendant, and which, therefore, they knew he had no authority to indorse ; and thirdly, because it was made in reference to an indorsement which, *in form*, they knew was not that of the defendant ; that the offering of the note to plaintiffs in Milwaukee within a day or two after its execution in Michigan, the fact that plaintiffs sought an interview with Buckley to ascertain whether the indorsement " was all right," and the answer of Buckley, all were inconsistent with the theory that the note was ever the property of the defendant (7 Barn. & Cress. 278 ; 34 N. Y. 72 ; 52 Barb. 592) ; that, the accommodation indorsement being a nullity in the hands of the payees, and the paper, as far as regards the indorsement, having had no inception until it was passed by the payees, the act of passing it for a greater discount than a legal rate of interest was usurious (*Cowles v. McVickar*, 3 Wis. 725), and although the usury (not being set up in the answer) could not be made available as a distinct defense, yet it was sufficient to destroy the *bona fides* of the transaction. *Ramsdell v. Morgan*, 16 Wend 574 ; *Keutgen v. Parks*, 2 Sandf. S. C. 60 ; *Hall v. Wilson*, 16 Barb. 548 ; *Johnson v. Morley*, Lalor, 29 ; *Dean v. Howell*, id. 39 ; *Clark v. Sisson*, 22 N. Y. 312 ; *Hall v. Earnest*, 36 Barb. 585.

COLE, J.   To our minds the position that the indorsement of Buckley, in the manner in which it was made, is to be treated as his personal indorsement, and not one in his official character, binding upon the bank, is clearly untenable. In the first place, Buckley was the cashier of the bank, the person who, in the

regular course of business, was authorized to indorse notes for the bank. He indorsed the note in question by signing his name, "Geo. Buckley, Cas." Now, it is said that the name of the bank does not anywhere appear in the indorsement, and that the paper does not bear any evidence to connect the bank with it in any manner. But the authorities cited on the brief of the counsel for the plaintiffs abundantly show that it is not necessary that the indorsement should be made in the name of the corporation, but that an indorsement by the cashier of the bank, adding the suffix "Cashier," or "Cash'r," or "Cr." or "Cash." will be regarded as an official indorsement. The reason and principle upon which these authorities proceed, are so fully stated in the opinions of the judges in those cases, that nothing further need be added here upon the point. See also, in addition to the cases cited by plaintiff's counsel, *Rockwell v. Elkhorn Bank*, 13 Wis. 653; *Ballston Spa Bank v. Marine Bank*, 16 id. 120; *Claflin v. Farmers' & Citizens' Bank*, 36 Barb. 540, which have more or less bearing upon the question.

But it is insisted that this was the individual and not the official act of Buckley, because it was made for the accommodation of the payees and first indorsees, and not for the use and benefit of the bank. The circuit court found, as a fact established by the evidence, that the indorsement was made without consideration and at the request and for the accommodation of the payees, the bank never having owned or negotiated the note, nor having any interest therein. But Buckley expressly swears that he indorsed the note to enable the payees to get it discounted in Milwaukee for the purpose of taking up paper that the bank had previously discounted for them, either due or becoming due. And the fair inference from his testimony is, that this paper referred to had been re-discounted for the bank in Milwaukee, and that he indorsed this particular note with the expectation

that the payees would use the money realized by its discount to take up that paper. But however this may be, we still think that if it was an accommodation indorsement for the benefit of the payees, yet, under the circumstances, the bank is liable thereon. We have already said that the indorsement was good in form to bind the bank, and cannot be regarded as the private indorsement of Buckley. But still it is claimed that even if the indorsement was good in form to bind the bank, yet the bank is not liable thereon, because the cashier only has authority to indorse paper owned by the bank, and cannot, in his official character, make an accommodation indorsement; and that if he does, he acts clearly beyond the scope of his authority, and the principal is not holden on the contract. Consequently it is argued that whoever purchases paper, bearing the cashier's indorsement, takes the risk of obtaining that which he had no authority to indorse, and no representation of the cashier that the paper indorsed belonged to the bank, nor any other representation made by him to show that the indorsement was rightfully and legally made, can avail to bind the bank upon an indorsement not authorized.

This question is not a new one in the courts. It is most elaborately and ably discussed in the *North River Bank v Aymer*, 3 Hill, 262; *Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank,* 14 N. Y. 633; *Same case*, 16 N. Y. 125; and conclusions were reached by the learned judges adverse to this view of the law. It is true, the decisions in those cases were not unanimous—C. J. NELSON dissenting in the first case, and Judge COMSTOCK in the other; but the strength of the argument seems to me decidedly with the majority opinions, and we have concluded to follow them as the better rule upon this subject. The case before the court falls fully within the principle and general reasoning of those cases, and therefore we have no

difficulty in saying that the bank is effectually bound by the indorsement of the cashier, even if it was made for the accommodation of Wadsworth, Adams & Co. And this upon the principle, that as the cashier is the person authorized to indorse notes for the bank, a purchaser of such paper in good faith before maturity is not bound, when he takes it thus properly indorsed, to inquire whether the bank owned it when it was indorsed or not (*Bank of N. Y. v Bank of Ohio*, 29 N. Y. 619; *Banking Association v. White Lead Co.*, 35 id. 505). It is true, in this case one of the plaintiffs, before they bought the notes, applied to the cashier, Buckley, to know if his indorsement was genuine, and asked if "it was all right," and was told it was. Perhaps the law would not impose this duty upon the plaintiffs of inquiring of the cashier, before purchasing the note, whether it was all right; but the fact that they did exercise this diligence cannot weaken their case. It is objected that this information was not sought of the cashier while at the counter in the bank, but when he was in Milwaukee. But what earthly difference can that make? Suppose the plaintiffs had seen the cashier on the street in Elkhorn, or on the steps of the bank building, and made this inquiry in regard to the paper? Can it be seriously claimed that they would have no right to rely upon his representations in respect to his indorsement, unless made by him while standing at the counter? It well might be that an officer might decline to answer such inquiries when away from the bank without its books before him to refresh his recollection. But certainly if he did undertake to give the information when away from the bank, a party about purchasing a note indorsed by him would have the right to rely upon the representations which the cashier might make in regard to the nature and character of the indorsement.

It is further insisted that the plaintiffs cannot be regarded as *bona fide* holders without notice that the

note never belonged to the bank. But we fail to see any circumstance attending the negotiation of the note which should have put them upon inquiry. It is said that the note purported to have been executed at Pentwater, Michigan, June 23, 1869, and that a day or two after it bore date it was left with the plaintiffs for sale by Chase. Therefore, it is argued, the plaintiffs must have known that the note could not, in that short space of time, have passed through the bank in the regular course of business; that time, distance and circumstances rendered it impossible that it should have done so. Whatever force there might be in this view of the matter, it is a sufficient answer to say that the plaintiffs did inquire of Buckley if the indorsement was his as cashier, and were told that it was. What more were they required to do?

We see no ground for holding that the note in the hands of Wadsworth, Adams & Co. was not the subject of sale in the market like any other commercial paper.

It follows from these views that the judgment of the circuit court must be reversed, and the cause be remanded with directions to enter judgment for the amount of the note against the bank.

*By the Court.*—Ordered accordingly.