Hiawatha Iron Co. vs. John Strange Paper Co.

HIAWATHA IRON COMPANY, Respondent, vs. JOHN STRANGE
PAPER COMPANY, imp., Appellant.

*February 7 — February 27, 1900.*

Corporations: Officers: Authority to indorse commercial paper: Promissory notes: Bona fide purchaser: Notice of fraud.

1. A provision in articles of incorporation making it the duty of the president "to have general charge, control, and management of the affairs of the corporation, and also to sign all contracts and conveyances," confers express authority upon that officer to indorse commercial paper, which all dealing with the corporation are entitled to rely upon implicitly.

2. The president of a corporation, who had both apparent and express authority to indorse commercial paper in its name, executed his individual notes payable in form to the corporation, and then as president indorsed them in blank in the corporate name and delivered them in payment of his individual debt to a third person. Such indorsement was not authorized by the directors, and the corporation received no consideration therefor. Before maturity the notes were transferred, for an adequate consideration, without further indorsement, to another corporation having no actual knowledge of their infirmity, by a business man in good repute, who had possession and apparent ownership of them. *Held,* that said transferee was a *bona fide* purchaser, and not charged with notice of the fraud upon the indorser by the circumstances under which the notes were purchased or by anything appearing upon their face.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This is an action upon two promissory notes against John Strange, as maker, and the *John Strange Paper Company*, a corporation, as indorser. The corporation defended on the ground that the indorsement of the corporate name upon said notes was made by John Strange in fraud of the corporation, and that the plaintiff was not a *bona fide* purchaser, but took the same with notice of the fraud.

The evidence showed that the notes were in fact executed by the defendant John Strange at Menasha, Wisconsin,

July 12, 1895, payable in form to the *John Strange Paper Company*, and were before delivery indorsed by John Strange in blank upon the back, "*John Strange Paper Co.*, by John Strange, Prt.;" that John Strange was in fact president of the corporation, but that the corporation received nothing for such indorsement, and that such indorsement was not authorized by the directors; that the notes were then delivered to one Charles R. Smith in payment of the individual debt of John Strange; that the plaintiff corporation purchased the notes before maturity, at Iron River, of one M. H. Ballou, who then had the notes in his possession as apparent owner, and gave in exchange therefor 750 shares of its own capital stock, which consisted of one quarter of the entire capital stock of the corporation. The evidence tended to show that the corporate property of the plaintiff consisted of leased interests in an iron mine partially developed, and the machinery and supplies owned and used in connection therewith, and that it was reasonably worth $30,000 at the time of the purchase of the notes. The notes were not indorsed by Smith or by Ballou, and the evidence showed that the plaintiff's directors who made the purchase had no knowledge at the time of the circumstances under which the notes were executed. The notes were duly presented for payment when due, and protested for nonpayment.

The articles of incorporation of the defendant corporation prescribed the duties of the president to be, among other things, "to have the general charge, control, and management of the affairs of the corporation, and also to sign all contracts and conveyances."

The jury found a special verdict, in answer to proper questions, to the effect that (1) the notes were obtained from the *John Strange Paper Company* through fraud; and (2) the directors of the plaintiff company purchased such notes in good faith. Upon this verdict, judgment was entered in favor of the plaintiff against both defendants for the sum of $6,211 36, being the principal and interest of the notes,

and for costs; and from this judgment the defendant corporation appeals.

*Silas Bullard* and *J. C. Kerwin*, for the appellant, contended, *inter alia*, that the special relation existing between John Strange, maker, and his principal, the defendant payee, disqualified the former to make the indorsements and negotiate the notes unless specially authorized so to do. Strange could not in his official character as president indorse his own notes and negotiate them and thus obtain the money ·upon them so as to cut off equities existing in favor of his principal, the defendant. *Haywood v. Lincoln L. Co.* 64 Wis. 647; *Cook v. Berlin W. M. Co.* 43 Wis. 442; *Cumberland C. & I. Co. v. Sherman*, 30 Barb. 553; *Walworth Co. Bank v. Farmers' L. & T. Co.* 16 Wis. 658; *N. Y. I. Mine v. First Nat. Bank*, 39 Mich. 644; Story, Agency, § 210; Tiedeman, Comm. Paper, § 82; *Claflin v. Farmers' & C. Bank*, 25 N. Y. 293; 2 Randolph, Comm. Paper, § 1014; *Lee v. Smith*, 84 Mo. 304; *Third Nat. Bank v. Marine L. Co.* 44 Minn. 65; *Stough v. Ponca M. Co.* 54 Neb. 500; *Anderson v. Kissam*, 35 Fed. Rep. 699; *West St. L. S. Bank v. Shawnee Co. Bank*, 95 U. S. 557; *Smith v. Los Angeles I. & L. C. Asso.* 78 Cal. 289; *Wilber v. Lynde*, 49 Cal. 290. The notes with the indorsements showing the relation between the maker and the payee constitute notice to the plaintiff. *N. Y. I. Mine v. First Nat. Bank*, 39 Mich. 644; 1 Parsons, Notes & Bills, 259; 2 Randolph, Comm. Paper, § 1012; 1 Daniel, Neg. Inst. §§ 796, 799; *Goodman v. Simonds*, 20 How. 367; *Canajoharie Nat. Bank v. Diefendorf*, 123 N. Y. 191; *Davis v. Seeley*, 71 Mich. 209; Tiedeman, Comm. Paper, § 82; *Claflin v. Farmers' & C. Bank*, 25 N. Y. 293; *Starin v. Genoa*, 23 N. Y. 452; *Titus v. Great Western T. Road*, 61 N. Y. 237; *San Diego v. S. D. & L. A. R. Co.* 44 Cal. 112; *Pickett v. School Dist.* 25 Wis. 551; *Bank of N. Y. N. B. Asso. v. Am. D. T. Co.* 143 N. Y. 564; *Griffiths v. Kellogg*, 39 Wis. 294. The plaintiff was guilty of bad faith. It wilfully shut its eyes against knowl-

edge open and apparent to it of the infirmity of the paper. *Oak Grove & S. V. C. Co. v. Foster*, 7 N. M. 650; 1 Parsons, Notes & Bills, 259; 1 Daniel, Neg. Inst. §§ 796, 799, 801; 2 Randolph, Comm. Paper, § 1012; *New York I. Mine v. First Nat. Bank*, 39 Mich. 644; *Cheever v. P. S. & L. E. R. Co.* 72 Hun, 380; *Chemical Nat. Bank v. Wagner*, 93 Ky. 525; *Davis v. Rockingham I. Co.* 89 Va. 290; *Wilson v. Metropolitan E. R. Co.* 120 N. Y. 145; *Shaw v. Spencer*, 100 Mass. 388; *Goodman v. Simonds*, 20 How. 367.

For the respondent there was a brief by *Greene, Vroman, Fairchild, North & Parker*, and oral argument by *H. O. Fairchild*.

WINSLOW, J.  The notes in question were executed by Strange in payment of his individual debt to Smith, and it is admitted that the indorsement of the corporation was an accommodation indorsement, and was placed thereon by Strange, as president, without authority and without consideration, and consequently that the corporation was not bound by such indorsement to the original holder of the notes, or any subsequent indorsee who took them with notice of the facts.  They were transferred to the plaintiff, for what must be considered an adequate consideration, before maturity, and with no actual knowledge of the infirmity in them, by a business man in good repute, who had possession and apparent ownership of them; and the only question in the case is whether the plaintiff was charged with notice of fraud upon the corporation by the circumstances under which it purchased the notes, or by anything appearing upon the face of the instruments themselves.

The appellant was a trading corporation, and it had undoubted power to receive commercial paper for debts owing to it, created in the course of its business.  *Rockwell v. Elkhorn Bank*, 13 Wis. 653.  From this it necessarily follows that it had also power to dispose of such paper by indorse-

ment or assignment as may suit its purpose. 1 Daniel, Neg. Inst. §§ 384, 385. When a corporation possesses this general power to become a party to commercial paper, such paper will be presumed to have been executed in the legitimate course of its business, and will be valid in the hands of a *bona fide* purchaser for value, whether executed in the usual course of business or not. 1 Daniel, Neg. Inst. § 386. An indorsement in blank is valid according to the law merchant, and does not affect a subsequent holder with notice of infirmities, or put him upon inquiry. *Lyon v. Ewings*, 17 Wis. 61. A corporation must necessarily act through an officer or agent in making an indorsement, and the indorsement will ordinarily be valid in the hands of a *bona fide* holder before maturity, if made by an officer or agent having actual authority to indorse commercial paper on behalf of the corporation, or by an officer or agent who is apparently clothed with such authority by the corporation, even though the indorsement be an accommodation indorsement and a fraud on the corporation. *Houghton v. First Nat. Bank*, 26 Wis. 663.

In the present case, John Strange, who indorsed the notes on behalf of the corporation, not only had for years transacted the corporation's financial business of this character, and thus been clothed with apparent authority to indorse commercial paper, but he had also express authority, by the articles of incorporation, "to have general charge, control, and management of the affairs of the corporation, and to sign *all* contracts and conveyances." This is a very broad and sweeping grant of authority, and must be held to include the indorsement of commercial paper; and it was an authority publicly proclaimed to the world, and which all dealing with the corporation were entitled to rely upon implicitly. Now, had the notes in suit in this case been the notes of some third person running to the corporation, and indorsed, as these notes were, in the corporate

name and by the proper officer, there can be no doubt that the corporation would be bound by such indorsement the moment such notes came into the hands of a *bona fide* purchaser for value before due, although in fact it never owned the notes and the indorsement was a fraud upon it. Upon their face, such notes would appear to have been notes taken by the corporation in the transaction of its business, and, being indorsed in the corporate name by the officer both apparently and actually authorized to indorse commercial paper for the corporation, a purchaser in good faith before maturity would not be bound to inquire whether the corporation owned it when it was indorsed or not, but would be entitled to assume that the relations of all the parties to the paper were precisely what they appeared to be upon its face. *Houghton v. First Nat. Bank,* 26 Wis. 663; *Hoge v. Lansing,* 35 N. Y. 136; *U. S. Nat. Bank v. First Nat. Bank,* 64 Fed. Rep. 985; *Warren-Scharf A. P. Co. v. Commercial Nat. Bank,* 97 Fed. Rep. 181.

But it is claimed that the fact that the notes on their face showed that they were given by the president of the corporation to the corporation itself was a fact which required a purchaser to inquire into the real nature of the transaction before purchasing them. Had the parties to the paper been reversed, and the notes been the notes of the corporation, executed by Strange and payable to Strange individually, a purchaser would doubtless have been put upon inquiry, because the notes would then have shown on their face that an officer of the corporation had dealt directly with himself and adversely to the interests of the corporation. *Haywood v. Lincoln L. Co.* 64 Wis. 639; *Third Nat. Bank v. Marine L. Co.* 44 Minn. 65; *Stough v. Ponca M. Co.* 54 Neb. 500; *Lee v. Smith,* 84 Mo. 304. And, again, had Strange given his note to a third person, and before delivery placed the corporate indorsement upon it, it might well be that a purchaser of such paper would be charged with notice of the

fact that the corporate indorsement was for accommodation only, and not in the course of business, and hence that he must inquire into the question of actual authority. *West St. Louis S. Bank v. Shawnee Co. Bank*, 95 U. S. 557. But we have no such case here. The notes upon their face import simply that Strange was indebted to the corporation and executed his notes to secure that indebtedness. This occurs frequently, and there is nothing either in the laws of business or good morals which prevents or disapproves of such a transaction. A corporation may deal with its officers, and take their notes for indebtedness resulting from such dealings. So far as appears on the face of the paper, the directors of the corporation may have required Strange to execute the notes. There is nothing on the face of the notes to indicate anything more than an ordinary business transaction.

We conclude that the undisputed evidence shows that the plaintiff was a *bona fide* holder of the notes for value, before maturity, and in the regular course of business. This conclusion renders unnecessary any discussion of exceptions reserved to portions of the charge, as well as the errors claimed because of the refusal to nonsuit the plaintiff and the refusal to grant a new trial.

A verdict for the plaintiff should have been directed.

*By the Court.*— Judgment affirmed.