PELTON and another, Appellants, vs. SPIDER LAKE SAWMILL & LUMBER COMPANY, Respondent.

*March 26—April 17, 1903.*

*Bills and notes: Accommodation indorsement by corporation: Powers of officers: Notice: Consideration: Court and jury.*

1. An officer of a corporation, in the absence of special authority, has no power to execute accommodation paper in the corporate name; and a person receiving such paper, either knowing or charged with knowledge of the fact that it is accommodation paper, cannot hold the corporation.

2. When a person receives a note for the debt of another, which bears the indorsement of a third person or corporation not in the chain of title, he is charged with notice that the indorsement is an accommodation indorsement.

3. Plaintiffs shipped lumber to the firm of W. & H., to be sold on commission. The defendant corporation, afterwards formed with H. as secretary and treasurer, rented the yard of W. & H. and sold lumber therefrom. Thereafter W. & H. sent to plaintiffs a note executed by another firm to the order of W. & H. and indorsed by W. & H., and also indorsed in the name of the defendant corporation by H. Plaintiffs credited the note to W. &

H. on their commission account. Defendant's vice president testified that it received no consideration for such indorsement. and was never indebted to W. & H. or to the plaintiffs; but H.,. defendant's secretary and treasurer, testified that the note was given and indorsed with the consent of the vice president and. that it in fact represented lumber of the plaintiffs bought by the defendant corporation from W. & H. *Held*, that it was a question for the jury whether the defendant's indorsement was· without consideration and made only for the accommodation of W. & H.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

*A. W. Sanborn,* for the appellants.

For the respondent there was a brief by *Lamoreux & Shea,*. and oral argument by *W. F. Shea.*

WINSLOW, J.   This is an action against the defendant (a foreign corporation), as indorser of two promissory notes for· $1,074.58 and $1,448.98, respectively, with interest.   The defense was that there was no consideration for the indorsement, and that the plaintiffs were not *bona fide* holders.   At. the close of the trial a verdict for the defendant was directed, and from judgment thereon the plaintiffs appeal.

Many of the facts were undisputed, and may be stated as follows:

The plaintiffs, *Pelton* and *Reid,* are partners, and were such in July, 1898, engaged in the manufacture of lumber at Cheboygan, Michigan.   At that time the firm of Willoughby & Hathway was engaged in selling lumber on commission, having a yard at Tonawanda, New York.   July 13, 1898, Pelton & Reid made a written contract with Willoughby & Hathway by which Pelton & Reid agreed to ship· one or more cargoes of lumber to Willoughby & Hathway at Tonawanda, which the second party agreed to sell to customers, and to guaranty payment for all lumber sold, and render monthly statements of sales, accompanied with remit-

tances for all lumber sold during the preceding month, the title to all of the lumber to remain in Pelton & Reid until sold. Other clauses in the contract provided that Willoughby & Hathway should advance the freight and insurance on the lumber, which was to be repaid to them by Pelton & Reid, and were to receive for their services in selling the lumber the sum of $1.75 per thousand feet; also, that in case Pelton & Reid became dissatisfied, or in case Willoughby & Hathway failed to render accounts as agreed, Pelton & Reid should have the right to take possession of the lumber unsold, and all unpaid accounts, and dispose of the remaining lumber. Under this contract, and prior to October 1, 1898, about 2,000,000 feet of lumber, worth about $24,000, were received by Willoughby & Hathway at Tonawanda. Up to May, 1899, Willoughby & Hathway had accounted to the plaintiffs in money and notes for about $5,000 of the proceeds of this lumber sold.

At Tonawanda a firm known as Calkins & Co. had a lumber yard adjoining the yard of Willoughby & Hathway, and one J. V. Smeaton was manager of the business. In June, 1898, the defendant corporation was organized by Willoughby & Hathway, Smeaton, and one Ellmaker for the purpose of transacting a lumber business, and of this corporation Ellmaker became president, Smeaton vice president, and Hathway secretary and treasurer, the active management of the corporation's business being in the hands of Smeaton and Hathway. January 1, 1899, the defendant corporation rented the Willoughby & Hathway yard, then containing from one to two million feet of lumber, and also rented Calkins & Co.'s yard, containing several million feet of lumber. At this time the intention of the defendant was to transact a commission lumber business in these yards, beginning with the opening of navigation in the spring of 1899. The defendant did not purchase the lumber in the Willoughby & Hath-

way yard at the time it rented the yard, but made an arrange-
ment with Willoughby & Hathway by which, when that firm
sold invoices of lumber, it shipped the lumber sold out of the
yard to customers, receiving for its services thirty-five cents
per thousand. It appears also that, when the defendant made
sales of lumber, it took the same from the Willoughby &
Hathway yard, and credited that firm for the lumber so
taken, and that the amount so taken between January 1 and
May 13, 1899, exceeded $13,000 in value. The exact amount
of the Pelton & Reid lumber which was in the yard at the
time defendant took possession does not appear, but there was
testimony tending to show that a considerable quantity of it
was there. All the lumber in the yard was closed out by July
or August, 1899. Hathway managed the firm business of
Willoughby & Hathway, and Hathway and Smeaton together
managed defendant's business.

In May, 1899, Willoughby & Hathway sent Pelton & Reid
by mail a four months' note for $2,486.27, executed by the
firm of Humphrey & Holdridge to the order of Willoughby
& Hathway, and indorsed by them, and also indorsed in the
name of the defendant by Hathway, and Pelton & Reid cred-
ited the same to Willoughby & Hathway on their commission
account. This note was not produced on the trial. Humph-
rey & Holdridge was a firm doing business at Honeoye Falls,
New York, and the note was purely accommodation paper
so far as they were concerned, given to the firm of Willoughby
& Hathway; but Pelton & Reid did not know this fact, and
supposed the note to be for lumber sold to Humphrey & Hold-
ridge. When this note came due it was not paid, but another
accommodation note of Humphrey & Holdridge was mailed
by Willoughby & Hathway to plaintiffs, and accepted by
them in renewal of the former note. This last note was pay-
able to the order of defendant, and indorsed in defendant's
corporate name by Hathway as treasurer, and also by Wil-

loughby & Hathway, and upon its receipt the note of April 29th was surrendered. When this note became due it was renewed by the giving of the two notes in suit, which were also accommodation notes executed by Humphrey & Holdridge to the order of the defendant, and indorsed in the defendant's name by Hathway as treasurer, and also by Willoughby & Hathway, and due two and three months respectively from date. They have never been paid. Both Hathway and Smeaton were accustomed to indorse commercial paper on behalf of the defendant. Willoughby & Hathway became insolvent prior to June 1899, and Humphrey & Holdridge failed in the latter part of the same year. The plaintiffs made no investigation or inquiry at any time as to the indorsement of respondent on any of the notes, nor as to consideration therefor, nor as to the authority of Hathway to use the corporate name.

The contention of respondent in the court below was that the indorsement of the notes in suit by defendant was purely an accommodation indorsement, without consideration, which Hathway had no power to make, and that the plaintiffs were not *bona fide* holders, because they received the paper for the individual debt of Willoughby & Hathway, and were charged with notice that the indorsement of the defendant was without consideration and unauthorized. It is certainly true that an officer of a corporation, in the absence of special authority, has no power to execute accommodation paper in the corporate name, and that a person receiving such paper, either knowing or being charged with knowledge of the fact that it is accommodation paper, cannot hold the corporation. Doubtless, also, when a person receives a note for the debt of another, which bears the indorsement of a third person or corporation not in the chain of title, he is charged with notice that the indorsement is an accommodation indorsement. *West St. Louis S. Bank v. Shawnee Co. Bank,* 95 U. S. 557;

*Hiawatha Iron Co. v. John Strange P. Co.* 106 Wis. 111,. 81 N. W. 1034; *Park Hotel Co. v. Fourth Nat. Bank,* 86 Fed. 742.

In the present case it appears that the original note of April 29th, of which the notes in suit were mere renewals, was delivered and received to apply upon the liability of Willoughby & Hathway on their commission contract. It appears by Hathway's own testimony that it was executed by Humphrey & Holdridge as makers, and was payable to the order of Willoughby & Hathway, and that he indorsed the corporate name of the defendant upon it before delivery to the plaintiffs. Thus the note itself showed that the defendant corporation was not in the chain of title, and hence that its indorsement was presumptively an accommodation indorsement for the benefit of Willoughby & Hathway. 1 Bates, Partnership, § 358. If, therefore, the evidence in the case had shown that such indorsement was in fact without consideration, and made only for the accommodation of Willoughby & Hathway, there can be no doubt that the plaintiffs were rightly defeated, because the form of execution of the first note (upon which, manifestly, the entire question depends) was such as, under the principles stated, to give them notice of the character of the indorsement, and hence notice that it was unauthorized, at least unless special authority could be shown. It is true that the testimony of the witness Smeaton tended to show that the defendant corporation received no consideration for the indorsement of the note by Hathway in its name, and that the defendant was never indebted to Willoughby & Hathway nor to the plaintiffs, and, if this testimony stood alone, doubtless the judgment was right; but the witness Hathway testifies directly that the original note was given and indorsed with Smeaton's knowledge, and that it in fact represented Pelton & Reid lumber bought by the defendant of Willoughby & Hathway. We are unable to say that this testimony was not credible. If true,

it undoubtedly formed a consideration for the indorsement of the note by the defendant, and the plaintiffs were certainly entitled to have the question as to its truth submitted to the jury.

*By the Court.*—Judgment reversed, and action remanded for a new trial.