PELTON and another, Appellants, vs. SPIDER LAKE SAWMILL & LUMBER COMPANY, Respondent.

*May 6—May 21, 1907.*

*Bills and notes: Signed blanks: Ownership: Unauthorized indorsement in name of corporation by its treasurer: Bona fide holders: Duty of inquiry: Consideration: Burden of proof: Instructions to jury: Improper remarks by court: Exceptions: Waiver: Harmless errors.*

1. Where a person takes from another, for that other's personal liability or on account thereof, the obligation upon commercial paper of a corporation in which such other is an officer of a character not ordinarily intrusted with the duty of making such obligations, the instrument being his handiwork, and such person knows his connection with the corporation, such person is put upon inquiry as to the real character of the paper and the authority of such other to use the name of the corporation in the transaction.

2. The treasurer of a corporation has no authority *ex officio* to give corporate notes or to obligate the corporation on commercial

paper, though if the usage of the corporation is to the contrary and it receives the proceeds it will be bound.

3. A certain firm was accustomed to accommodate with its credit the defendant corporation engaged in a general lumber business, and had delivered to it blank promissory notes signed by the firm, which the corporation might fill out and use in its discretion. One H., treasurer of the corporation, had custody of or access to the blank notes so signed. He was also a member of the firm of W. & H. which was indebted to plaintiffs on account of lumber sold for them under a commission contract by which they had agreed to pay at the end of each month for lumber sold by them during that month. Taking one of the signed blanks aforesaid, H. filled it out, inserting the firm name W. & H. as payee, indorsed it with that name, and sent it to plaintiffs on account of such indebtedness, which exceeded the amount of the note. In renewal of that note H. used another of the signed blanks, making it payable to the order of the defendant corporation, indorsing its name by H. as treasurer, and also indorsing the firm name of W. & H.; and afterwards renewed the second note by using two blanks in like manner. The corporation had bought some of plaintiffs' lumber from W. & H., and W. & H. were indebted to plaintiffs on account thereof, but the corporation had fully paid W. & H. therefor and was not, at any time during the period covered by said notes, indebted to plaintiffs on account of such lumber. In an action upon the renewal notes last given, *held:*

(1) Mere ownership by the corporation of the blank notes did not constitute ownership of the notes sued on as legal obligations on its part to pay.

(2) H. had no authority as treasurer to indorse the notes in the corporate name for the personal benefit of himself and his partner, even though the vice-president of the corporation may have known and consented to his act.

(3) The corporation, having received no consideration for the first note given, did not receive any consideration for any of the notes given merely in renewal thereof and indorsed in the corporate name without authority.

(4) The notes having no other basis than the liability of W. & H., the plaintiffs, who took them with knowledge that H. was the treasurer of the corporation and was using its name and credit in his private affairs, were put upon inquiry as to his authority so to do, and are therefore not *bona fide* holders as to the corporation; and the corporate name having been indorsed by the treasurer without special authority, the corporation is not bound.

4. An instruction in such case that the burden of proof generally was upon the plaintiffs is *held* to have been substantially correct, the questions whether the indorsements on the notes were those of the corporation, whether the papers in the beginning belonged to it, and whether H. had any authority to make the papers and use them as he did, being all the questions really controverted except those as to whether the corporation received any consideration for the notes, and the jury being instructed that as to this last branch of the case the burden of proof was on defendant.

5. During conversation between the court and counsel, while the charge was being settled, as to which side presented a certain witness, the court said in the presence of the jury: "Everybody seems to have been tired of [the witness] before they got through with him." After further conversation the charge to the jury was read. *Held*, that the remark quoted was not part of the charge and could not be excepted to as such; and, no exception having been taken at the time, error in making the remark was waived.

6. The giving of instructions not applicable to the case is not necessarily error.

7. An instruction, with reference to a special verdict, that when the burden of proof rests on a party the jury cannot find an answer favorable to such party unless the truth of the proposition involved in such question has been affirmatively established, nor unless they are satisfied by the evidence that the fact exists, and by a preponderance of the proof, etc., is *held*, though not altogether accurate, to have fairly expressed the correct rule and not to have been harmful error in the absence of any request for a more definite instruction.

8. It is improper to separate a sentence in an instruction from its connection and except thereto, when such sentence standing alone conveys a meaning different from that indicated by the instruction as a whole.

9. An instruction to the effect that the evidence of the plaintiffs tended to prove one thing, specifying it, and the evidence of the defendant tended to prove the contrary, is *held*, if error, not to have been material.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Action to recover on two promissory notes, aggregating $2,523.56, with interest. The complaint was in the usual form to recover of the defendant corporation as an indorser,

The notes were signed by Humphrey & Holdridge, payable to the order of the defendant, and indorsed in its name by W. W. Hathway, treasurer, and by Willoughby & Hathway, a firm of which said treasurer was a member. The defense was that the defendant had no connection with the transaction of giving the notes; that it received no consideration therefor; and that plaintiffs were not *bona fide* holders.

There was evidence to this effect, and on many points the same was uncontroverted: Plaintiffs shipped to Willoughby & Hathway, at Tonawanda, New York, a considerable quantity of lumber to be sold on commission, they to be responsible as guarantors for the payment of all lumber sold, remittances to be made at the end of each month for lumber sold during the preceding month. After the commission contract was made defendant corporation was formed with Willoughby & Hathway, one Smeaton, and one Ellmaker as its stockholders, the latter becoming president, Smeaton vice-president, and Hathway secretary and treasurer, and the last two being given the active management of the corporate business. January 1, 1899, the corporation rented the Willoughby & Hathway lumber yard and also a yard near by belonging to Calkins & Co., purposing to transact there a general lumber business. It did not purchase the lumber stock in the Willoughby & Hathway yard, but arranged to sell the same on commission. It was customary for a firm known as Humphrey & Holdridge to accommodate defendant with its credit, delivering to it signed blank promissory notes, which it might fill up and use in its discretion. At the times hereafter mentioned when notes were given to the plaintiffs the defendant had several of such signed pieces of paper on hand in the custody of Hathway as its secretary and treasurer, or where he had opportunity to obtain them.

In May, 1899, Hathway, for Willoughby & Hathway, sent plaintiffs a note, dated April 29, 1899, signed by Humphrey & Holdridge, payable to the order of Willoughby & Hathway

and duly indorsed by them, payable in four months with interest, for $2,486.27. Willoughby & Hathway were then indebted to plaintiffs on the aforesaid commission contract in excess of the sum mentioned in said note and it was sent to plaintiffs and received by them on account thereof. There was no express agreement that the note should be regarded as payment. Though it was purely accommodation paper plaintiffs had no knowledge thereof. It was produced by Hathway by his taking and filling up one of the signed blanks aforesaid, designed for the use of the defendant, his act in that regard and in sending the paper to plaintiffs being without any authority of the corporation. The corporation did not then owe plaintiffs or Willoughby & Hathway for any lumber purchased of the latter and sold by them under the aforesaid commission contract. When the note came due Hathway renewed it, using another of the aforesaid signed blanks. The renewal note was made payable to the order of defendant, and was indorsed in its name by W. W. Hathway, treasurer, and also indorsed by Willoughby & Hathway. When the second note came due it was renewed by the two notes in suit, they being produced by Hathway in like manner as the others. The first note did not represent sales of plaintiffs' lumber to the defendant, not paid for till the note was given. On this point there was a controversy in the evidence. There was also a controversy as to whether the vice-president of the defendant knew of the indorsements of the notes in the name of the defendant and the use of them by Hathway and consented thereto, but there was no controversy that Hathway did not have special authority to devote defendant's name and credit to the use of himself and partner. There was also a controversy in the evidence as to whether the defendant after the giving of the first note and before November 29, 1899, became indebted to plaintiffs for lumber stock received from Willoughby & Hathway.

The jury rendered the following verdict:

"(1) Was defendant—*Spider Lake Sawmill & Lumber Company*—ever the owner of the promissory notes, or either of them, described in plaintiffs' (Pelton & Reid's) complaint? *A.* Yes.   (2) Did W. W. Hathway, who indorsed said notes described in plaintiffs' complaint over to plaintiffs in the name of defendant, have any authority from said defendant to indorse said notes or either of them in the name of defendant? *A.* Yes.   (3) Were said notes indorsed in defendant's name over to plaintiffs by the said Hathway for the sole purpose of satisfying the partnership indebtedness of Willoughby & Hathway to said plaintiffs? *A.* Yes.   (4) Did said defendant ever receive any consideration for its alleged indorsement of said notes or of that of either of them? *A.* No.   (5) Was defendant's name indorsed on the note of April 29, 1899, before it was delivered to plaintiffs? *A.* No.   (6) Did Willoughby & Hathway sell defendant any of plaintiffs' lumber or lath? *A.* Yes.   (7) If you answer question No. 6 by 'Yes,' what was the entire purchase price thereof? *A.* $16,253.88.   (8) If in question No. 7 you fix the purchase price thereof, has defendant paid Willoughby & Hathway that amount? *A.* Yes.   (9) Has defendant paid Willoughby & Hathway in full for all lumber or lath purchased by defendant from them? *A.* Yes.   (10) Were Willoughby & Hathway indebted to plaintiffs on April 29, 1899, on account of lumber or lath sold by Willoughby & Hathway to defendant? *A.* Yes.   (11) Have Willoughby & Hathway been indebted to plaintiffs ever since said April 29th on said account? *A.* Yes.   (12) Was defendant indebted to plaintiffs on April 29, 1899, on account of lumber or lath sold by Willoughby & Hathway to defendant? *A.* No.   (13) Was defendant indebted to plaintiffs for any lumber or lath had or received by defendant from Willoughby & Hathway any time between April 29, 1899, and November 29, 1899? *A.* No."

The court changed the answer to question No. 1 from "Yes" to "No" and the answer to question No. 2 to "Only such authority as is conferred by defendant's by-laws," and upon the verdict as so amended rendered judgment in defendant's favor.

For the appellants there were briefs signed by *Sanborn, Lamoreux & Pray* and *H. B. Walmsley,* and oral argument by *Mr. Walmsley.* They contended, *inter alia,* that plaintiffs were holders of the first note for value, having impliedly agreed to extend the time of payment of the amount thereof until the maturity of the note. *Johnston H. Co. v. McLean,* 57 Wis. 267. If, then, Hathway misappropriated this piece of paper, the result of his wrongdoing was to fasten a liability upon Humphrey & Holdridge. And for this misconduct of his, the defendant corporation was clearly liable to Humphrey & Holdridge. 7 Am. & Eng. Ency. of Law (2d ed.) 825, 826; *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Garvik v. B., C. R. & N. R. Co.* 131 Iowa, 415, 108 N. W. 327; 7 Am. & Eng. Ency. of Law (2d ed.) 827 (b); *Foster v. Essex Bank,* 17 Mass. 499, 511. The action would be trover. 1 Am. & Eng. Ency. of Law (2d ed.) 384, note 2. The second note was in renewal of the first and was indorsed by the defendant (by Hathway). The purchaser is "put upon inquiry" only when the note shows upon its "face that an officer of the corporation had dealt directly with himself and adversely to the interests of the corporation." *Hiawatha I. Co. v. John Strange P. Co.* 106 Wis. 111, 116; *Park Hotel Co. v. Fourth Nat. Bank,* 86 Fed. 742, 744; *West St. L. Sav. Bank v. Shawnee Co. Bank,* 95 U. S. 557, 24 L. Ed. 490. It is true that by the delivery of this note Hathway was paying a note upon which he was liable as an indorser, as one of the firm of Willoughby & Hathway. But the utmost effect of that circumstance is to make the note presumptively an accommodation note. *McLellan v. Detroit F. Works,* 56 Mich. 579, 23 N. W. 322. And this presumption vanishes here in the light of the uncontradicted evidence that the defendant corporation *did* receive a consideration—value—for this note. "The surrender of an outstanding obligation to avoid any suit that might be brought upon it is a sufficient consideration." *Mansfield v. Watson,* 2 Clarke (Iowa) 111,

11 Cent. Dig. 263 (e) ; *Perry v. Buckman,* 33 Vt. 7, 11 Cent. Dig. 264 (p) ; *Coggins v. Murphy,* 121 Mass. 166. If, then, the second note was issued upon a valid consideration moving to the corporation defendant, it became a valid obligation of the corporation in the hands of plaintiffs, and the notes in suit, being renewals of that note, are therefore adequately based on a sufficient consideration.

For the respondent there was a brief by *Lamoreux & Shea,* and oral argument by *C. A. Lamoreux.*

MARSHALL, J. This case having been here on appeal from a former judgment (see *Pelton v. Spider Lake S. & L. Co.* 117 Wis. 569, 94 N. W. 293), when many of the questions in relation to respondent's liability on the notes were settled, it is not deemed advisable to discuss any but the new questions raised, at least to any considerable length.

Counsel for appellants assign thirty-one errors, but many of them are of such a character as to require but a brief mention because of the former decision or the state of the record, and some none at all because they are not discussed, suggesting the reasons supposed to exist why the rulings involved were prejudicial. The latter will be passed over without mention, and the others will be discussed in the order which seems most logical under the circumstances, and without referring to them in all their details, such reference not being deemed necessary to a decision of the case.

The court was justified in changing the answer to the first question from "Yes" to "No" because the evidence is all one way; that while the corporation owned the blanks with the signature of Humphrey & Holdridge affixed thereto, it had no concern in filling them or with the paper in its completed form. At best for the plaintiff the corporation merely consented to the use of the blanks by Hathway so far as the vice-president had any authority in the matter and that, even, as indicated in the statement, was controverted. The mere

ownership of the blanks did not constitute ownership of the notes as legal obligations on its part to pay.

The court was warranted in changing the answer to the second question as there was no evidence that the corporation specially authorized Hathway to use its credit, and it was ruled on the former appeal that without such special authority the corporation was not bound by his act to any person charged with notice of such want of authority. The mere consent of one of the officers of a corporation that another officer may do an act requiring special corporate authority, manifestly, does not constitute any legitimate basis for the doing of such act.

Willoughby & Hathway being factors and guarantors of payment for the lumber sold and liable to remit at the end of each month for that sold during such month they became indebted to appellants as fast as lumber was disposed of for the sale price thereof less their commissions. They recognized that relation when the first note was sent to appellants. The consideration therefor as regards the latter was a mere extension of the time of payment of so much of the Willoughby & Hathway indebtedness as was covered by the note. By the finding of the jury and the evidence it is a verity in the case that when the note was given it was solely on account of such indebtedness, and, therefore, as regards the maker of the note it was at best purely accommodation paper.

It is suggested that as the acceptance of the paper involved an extension of the time of payment, as before indicated, it was supported by sufficient consideration under sec. 1675—51, ch. 356, Laws of 1899, to bind Humphrey & Holdridge notwithstanding it was given for the pre-existing debt of Willoughby & Hathway, and to bind the corporation to which Humphrey & Holdridge had intrusted the signed blanks, and, therefore, when the second note was given to take up the first it canceled the latter liability, creating a new one of the same nature of the corporation to Humphrey & Holdridge, which

was likewise canceled, a new one of like nature being created when the notes in suit were given, and so the corporation in fact received a consideration for the latter notes. That argument is ingenious but we are unable to see sufficient merit in it to warrant any extended discussion thereof. The authorities cited by the learned counsel do not seem to bear out their contention. It is regarded as a sufficient answer to such contention that the corporation did not make the indorsement on the second note or those on the last notes, or turn out the paper in either case upon its own or any other liability. If it, recognizing a liability, had discharged the same in the manner suggested the case might be different. As it stands, the giving of the paper with the corporate indorsement in form thereon was wholly unauthorized. The wrongful use of the paper, falsely purporting to represent a corporate liability, as to one having knowledge of the facts or who was reasonably put on guard in respect thereto, manifestly, would not bind the corporation. So the verdict is fully sustained that the corporation received no consideration for the notes in suit, they being merely the last of a series of renewals. They go back to and depend upon the first note, which was given, as we have seen, solely for the indebtedness of Willoughby & Hathway or, more correctly speaking, as collateral thereto.

On the former appeal it was supposed that the first note was indorsed by respondent but not in the chain of title from the makers to appellants, and so it was held that such an indorsement was notice, of itself, that the paper might be, as regards respondent, for accommodation only, putting the appellants on inquiry in respect thereto. It seems logical to hold all the more, appellants were put on inquiry as to the real character of the notes in suit, since they knew that the person who assumed to indorse them in the name of the corporation was its treasurer and that the use made thereof was solely for his advantage and that of his partner. A treasurer

of a corporation has no authority *ex officio* to give corporate notes or to obligate the corporation on commercial paper, though true, if the usage of the corporation is to the contrary and it receives the proceeds it will be bound. 1 Rand. Comm. Paper (2d ed.) § 371. But that does not help in this case, as the corporation did not receive any benefit from the notes indorsed in its name. According to the verdict of the jury and the evidence, as we have seen, the notes have no other basis than the liability of Willoughby & Hathway, and as they were taken by appellants with knowledge that Hathway was the treasurer of the corporation and that he assumed to use its name and credit in his private affairs they were put upon inquiry in respect to his authority so to do, and, therefore, cannot be held to have come by the paper *bona fide* so as to bind the corporation. It could only be bound under the circumstances, as held on the former appeal, by showing special authority for Hathway to make the paper as he did, or that the corporation received the consideration for the notes, both of which matters are negatived by the verdict. This is deemed to be amply supported by the authorities cited by counsel for respondent. *Germania S. V. & T. Co. v. Boynton,* 71 Fed. 797, 19 C. C. A. 118; *Farmers' L. & T. Co. v. Fidelity T. Co.* 86 Fed. 541, 30 C. C. A. 247; *Park Hotel Co. v. Fourth Nat. Bank,* 86 Fed. 742, 30 C. C. A. 409; *McLellan v. Detroit F. Works,* 56 Mich. 579, 23 N. W. 321; *Merchants' Nat. Bank v. Detroit K. & C. Works,* 68 Mich. 620, 36 N. W. 696; *West St. Louis Sav. Bank v. Shawnee Co. Bank,* 95 U. S. 557.

Appellants' counsel refer to *Hiawatha I. Co. v. John Strange P. Co.* 106 Wis. 111, 81 N. W. 1034, as limiting the foregoing rule to a situation where the paper, under the circumstances, irresistibly, suggests want of authority to utter it. We do not understand any such rule is laid down in that case. There was no occasion for there considering such a question, as the holder of the paper received the same

by indorsement before maturity and for value from the first taker. The latter had knowledge of the infirmity in the paper but his indorsee had no such notice—an entirely different situation from the one we have here. There the paper was held by a purchaser in good faith because such purchaser had no knowledge that the paper was used for the individual benefit of the corporate officer. Here, as we have seen, plaintiffs were otherwise situated. They cannot be held to have taken the paper in good faith since—though they knew that Hathway used the corporate obligation for his own benefit, making the indorsement on the paper to enable him to do so—they made no inquiry as to his authority, yet such inquiry would have disclosed the fact that the corporation had no legal connection with the transaction.

Complaint is made because the court instructed the jury that the burden of proof, generally, was upon the plaintiffs. That instruction was substantially correct. There was an issue on the pleadings as to whether the indorsements on the notes were those of the corporation. Appellants were put to their proof on that point. It appearing that the consideration for the notes was solely the individual indebtedness of Willoughby & Hathway and that appellants took the paper under such circumstances as to be put on inquiry as to the corporate connection with the matter, they were put to their proof as to whether the papers in the beginning belonged to the corporation, and as to whether Hathway had any authority to make the papers and use them as he did. That covers all the questions really controverted on the evidence which were submitted to the jury, except those as to whether respondent received any consideration for the notes, as to which the jury were instructed the burden of proof was upon the defendant. It is by no means clear but that the burden of proof on that branch of the case was really on appellants.

Complaint is made because the court said in the presence

of the jury: "Everybody seems to have been very tired of Mr. Hathway before they got through with him." Some important questions turned largely on the credibility of Hathway's evidence, and if the learned court had made the remark quoted, in his charge, as claimed, an exception thereto would challenge serious attention. Counsel for respondent insists that the remark was not made in the charge, but was addressed to counsel during conversation between court and counsel while the charge was being settled, in respect to which side presented Hathway as a witness. It is considered that such contention is supported by the record. Without going into particulars for the purpose of demonstrating the matter we so hold. Therefore, the error in making the remark must be deemed waived because not excepted to when made. It has often been held that prejudicial remarks in the course of a trial by court or counsel not seasonably excepted to cannot be regarded as harmful error. *Vass v. Waukesha,* 90 Wis. 337, 63 N. W. 280; *Heucke v. Milwaukee City R. Co.* 69 Wis. 401, 34 N. W. 243; *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565. The same rule applies to such matters as to the offer of improper evidence. Unless excepted to at the time, generally speaking, the incident is deemed waived. 8 Ency. Pl. & Pr. 215. It does not appear that when the remark complained of was made, under the circumstances of the occurrence, counsel for appellants regarded it of sufficient importance to require the court's attention to be called to its probable prejudicial effect, and so it happened that they later excepted thereto as a part of the charge, though the record shows that after the remark was made and considerable was said by the court to counsel in respect to the law of the case "The court then read his charge to the jury."

Complaint is made because the court made some remarks to the jury on the subject of the impeachment of witnesses, the claim being that it was suggested that Hathway had been

impeached.   The only language on the subject which was included in the charge seems to be this:

"It is the rule that a party who offers the evidence of a witness holds out such witness to be a credible witness; he may, however, introduce evidence tending to show that the testimony of such witness (although offered by him) is not true, by the testimony of any other witness or witnesses, if he sees fit, but such party who offers the testimony of a witness in his behalf cannot, under the law, impeach the testimony of the witness so offered by him."

It may be that the instruction was entirely unnecessary; that there was no effort in the case to impeach any witness directly, but we are unable to see that the quoted language pointed specially to Hathway.   The court in addressing counsel before the charge was given made some statements, regarded as improperly excepted to as part of the instructions, wherein the evidence of Smeaton was spoken of in connection with that of Hathway as having been subject to impeachment by the party adverse to the one presenting the witness, if such party had evidence competent therefor.   It were better to have omitted the whole subject from the charge, under the circumstances, but we are unable to see any reasonable probability of appellants having been prejudiced by the contrary course.   True, as claimed, it is error to give instructions not applicable to the case, but not always harmful error.   It is the latter only when the adverse party may probably have been prejudiced by the instruction.   Sec. 2829, Stats. (1898), applies:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

That is as applicable to errors in instructions as to others occurring in the course of a trial.   *Jackson v. State,* 91 Wis.

253, 267, 64 N. W. 838; *Williams v. Hochle;* 95 Wis. 510, 512, 70 N. W. 556.

The court gave this to the jury on the burden of proof:

"Where the burden of proof rests upon a party, you cannot find an answer favorable to such party, unless the truth of the propositions involved in such question has been affirmatively established, nor unless you are satisfied by the evidence that the fact exists, and by a preponderance of the proof. If, in weighing the evidence, you find the testimony equally balanced, and of course if the evidence of the party on whom the burden of proof rests does not outweigh that of the other party, you must answer the question against the party on whom the burden of proof rests."

It is claimed that such language violates the rule that a party on whom the burden of proof rests to establish the existence of a fact must do more, to entitle him to a finding in respect thereto, than to produce a preponderance of evidence tending to establish it; that he must produce such preponderance of evidence and it must be of such probative force as to satisfy or convince the jury of his contention, as said in *Anderson v. Chicago B. Co.* 127 Wis. 273, 106 N. W. 1077; satisfy the jury to a reasonable certainty of the existence of the fact, as said in *Pelitier v. C., St. P., M. & O. R. Co.* 88 Wis. 521, 60 N. W. 250; *Guinard v. Knapp, Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671, and other cases.

While the language used by the learned court is not altogether accurate, it does not seem that it may probably have been understood by the jury as suggested. The court said as part of the instruction, as will be seen, You must be "satisfied by the evidence that the fact exists, and by a preponderance of the proof." The other language used in connection therewith did not materially impair the meaning thereof, which fairly expressed the correct rule. Mere want of precision in an instruction is not harmful error, except in connection with the refusal of a requested more definite instruction. *Murphy v. Martin,* 58 Wis. 276, 16 N. W. 603.

Counsel for respondent was permitted to ask Hathway on cross-examination this question: "Do you know anything about such a check." That followed an examination, which was not objected to, respecting some trouble between the vice-president of the respondent and the witness before the latter severed his relations with the company and thereafter, in which the improper use of a check purporting to have been signed by respondent was suggested. The witness answered thus: "I know something about it." He was then permitted without objection to testify at length in respect to the check transaction in which he negatived all wrong in the matter. Conceding for the purpose of the discussion that the subject was entirely irrelevant we are unable to see how appellants were prejudiced by the ruling made. If there were any prejudice it was from the general examination in respect to the check which was not objected to.

Portions of the charge are pointed to as not having anything to do with the questions the jury were called upon to decide. We shall not refer to them in detail. It is not claimed that they were prejudicial, and if it were otherwise we are unable to discover any probable harm. The mere giving of instructions not applicable to the case does not constitute harmful error. *Ward v. Henry,* 19 Wis. 76, relied upon by appellants' counsel, is in harmony with this. The court there remarked:

"The mere irrelevancy of instructions given by the court to the jury is said in itself, independent of all other considerations, not to be a sufficient ground to authorize a new trial; but where injustice has been done by the verdict, and it is probable the jury were misled by the instructions, then we think a new trial should be granted."

Further complaint is made because, as it is said, the court told the jury, "The defendant has paid said Willoughby &

Hathway for all lumber." We are unable to find that language in the charge, except in this paragraph:

"The evidence of the defendant tends to show that it is not indebted to the firm of Willoughby & Hathway, and that for any and all transactions which passed between the defendant and Willoughby & Hathway the defendant has paid said Willoughby & Hathway in full thereof, while the evidence of the plaintiffs, and especially the testimony of the said Hathway, tends to show that there is an indebtedness still existing from the defendant to the firm of Willoughby & Hathway."

It is improper to separate a sentence in a charge from its connection and except thereto when such sentence standing alone conveys a very different meaning from that indicated by the instruction as a whole.

The jury were instructed, in effect, as to several issues covered by the questions, that the evidence of the plaintiffs tended to prove one thing, specifying it, and the evidence of defendant to prove the contrary. We see no serious error in that, if error at all. The only justification for submitting an issue to the jury was that just the situation suggested existed, i. e. that there was a controversy between the parties upon the evidence in respect thereto. The court did not say to the jury, as one would suppose by looking at the assignments of error, merely that "the evidence of the defendant tends to show that defendant has paid for all lumber and lath which it purchased from said firm of Willoughby & Hathway." There was no such singling out of the evidence on one side and giving thereto special prominence. The quoted language was used in connection with this in the same sentence: "While the evidence of the plaintiffs, and especially the testimony of the said Hathway, tends to show that there is an indebtedness still existing from the defendant to the firm of Willoughby & Hathway." That is an example of several instances where a sentence or part of a sentence

seems to have been separated from its connections and excepted to when the whole is plainly free from error.

There is no other question which seems worthy of special mention. The case without harmful error indicates that Hathway used the notes in question to apply on the individual indebtedness of himself and partner; under such circumstances as to put appellants upon inquiry as to his authority so to do; that he had no such authority, and that the notes were, as regards the corporation, wholly without consideration. The decision should be viewed as strictly restrained to the facts of the case. It is not to be taken as an approval of all that is said in the *Park Hotel Case* (86 Fed. 742, 30 C. C. A. 409) cited. The holding is this: Where a person takes from another, for that other's personal liability or on account thereof, the obligation upon commercial paper of a corporation in which such other is an officer of a character not ordinarily intrusted with the duty of making such obligations, the instrument being his handiwork, and such person knows his connection with the corporation, such person is put upon inquiry as to the real character of the paper and the authority of such other to use the name of the corporation in the transaction.

*By the Court.*—The judgment is affirmed.