SANDUSKY, The (OLMSTEAD v.). See Case No. 10,504.

SANDUSKY SEAT CO. (COMSTOCK v.). See Case No. 3,082.

SANDWICH, The (STEVENS v.). See Case No. 13,409.

SANDY HOOK, The. See Cases Nos. 10,607 and 10,608.

## Case No. 12,309.

### SANDY RIVER BANK v. MERCHANTS', &c., BANK.

[1 Biss. 146.] [1]

Circuit Court, N. D. Illinois. Jan. Term, 1857.

BANKS — AUTHORITY OF CASHIER TO SETTLE ACCOUNT.

1. The cashier of a bank, as such, has no authority in another state to settle an account, taking private notes and drafts, and giving a receipt in full. In order to bind the bank, his power must be in the nature of an appointment as agent.

[Cited in Bank of Commerce v. Hart, 37 Neb. 197, 55 N. W. 632. Cited in brief in First Nat. Bank v. Pierce, 99 Ill. 273.]

2. His is a limited authority, and parties claiming a discharge otherwise than by payment must show his authority.

[Cited in Bank of Commerce v. Hart, 37 Neb. 197, 55 N. W. 632.]

The Sandy River Bank, of Farmington, Maine, was established in 1853, with a capital of $50,000. Of this capital a controlling interest, amounting to $38,000, was taken by the owners and managers of the Merchants and Mechanics' Bank of Chicago, the remaining $12,000 being held by parties in Maine. At that time Stephen Bronson was cashier and general financial agent of the Merchants and Mechanics' Bank. Through his engineering, Thomas J. Jones, formerly in a banking house in Chicago, was sent to Farmington to become the cashier of the Sandy River Bank. He assumed his position with the secret understanding that his salary of $850, which was all the Sandy River Bank managers allowed him, was to be increased to $2,000 per annum, the difference to be charged to the Merchants and Mechanics' Bank as "money of Jones." With this secret understanding Jones so managed the affairs of the Sandy River Bank, that the Merchants and Mechanics' Bank of Chicago, had at all times, during the Bronson administration, from $10,000 to $40,000 of the funds of the Sandy River Bank, over and above what appeared upon the books of the latter. In July, 1855, the sum of $22,000 stood charged against the

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Sandy River Bank on the books of the Merchants and Mechanics' Bank, and Mr. Woodworth, president of the former bank, with Mr. Bronson, the cashier, had an interview in New York City with Cashier Jones, at which a settlement was arrived at, by Jones giving a receipt in full and taking $12,000 of Bronson's private paper and $10,000 in cash. Of this so-called cash payment, a large part consisted of Bronson's private drafts endorsed officially by Jones as cashier of the Sandy River Bank. These drafts were protested and suits brought by the holders against the Sandy River Bank on its endorsements. The bank being compelled to pay them, brought this action to recover for a balance due on account. The defendant pleaded the above settlement and the receipt then given. The plaintiff insisted that Jones had, as cashier, no authority to make such a settlement or to receive these drafts as cash.

George Evans, for plaintiff.
Corydon Beckwith, for defendant.

DRUMMOND, District Judge (charging jury). Mr. Bronson, as the cashier of the Merchants and Mechanics' Bank, had no right, because he was cashier merely, to make the contract he made with Mr. Jones of the 28th of September, 1853, so as to bind the bank; there must have been an express authority from the bank or one resulting from necessary implication. And in order to be binding on the bank at all, it would have to be in the nature of the appointment of an agent, and not an appointment to the cashiership of a bank in another state.

A bank, undoubtedly, may appoint agents in another state to perform any act which it could perform itself, and which is not prohibited by law.

If the items in the account which it is alleged are charged to the defendant, as salary of Mr. Jones, have been admitted or allowed by the bank as a bank, for services performed, then the jury may charge the defendant with them, or if, with a full knowledge of all the facts attending its payment, the bank has admitted or allowed it, in the nature of compensation for services performed, and not as salary merely, then the defendant was bound by it, but not otherwise.

The cashier of a bank is ordinarily the executive officer of the bank. He is the agent through whom third persons transact their business with the bank. The bank generally holds him out to the world as having authority to act, according to the general usage, practice, and course of business, and all acts done by him within the scope of such usage, practice, and course of business bind the bank as to third persons who transact business with him on the faith of his official character; and perhaps it may be presumed, without proof and merely from his office, that he is authorized to receipt and discharge debts and deliver up securities on payment or discharge of the debt for which they were held, and he may have power to endorse bills, notes, &c., for collection. He may draw checks for funds in other banks. Possibly these powers might be inferred from his official position. But still his authority is a limited authority, and when a party claims a discharge from a debt due the bank, not by payment, but by giving other or different notes, bills, or securities, which the cashier has agreed to take and release the debt, his authority, like that of any other agent, must be shown by proof.

As a general rule, a jury have not a right to infer that a cashier of a bank, as such, has the authority to compromise and discharge debts without payment, or by taking other securities, but the authority from the bank must be shown expressly or by necessary implication, or it must exist and be established by the particular usage, or practice, or mode of doing business of the bank, or it must be ratified or acquiesced in by the bank in order to be binding.

Verdict for plaintiff.

NOTE. The cashier cannot bind the bank except within the scope of his authority, Foster v. Essex Bank, 17 Mass. 479. Has no authority to transfer judgments or dispose of its property. The president and directors are the only persons who can legally make such transfer. If the cashier acts as their agent, his authority must be shown. Holt v. Bacon, 25 Miss. 567. Acts of a cashier are only binding upon the bank when he acts within the sphere of his agency. State v. Commercial Bank, 6 Smedes & M. 218; U. S. v. City Bank of Columbus, 21 How. [62 U. S.] 356. "Ordinary duties" does not comprehend making contracts involving the payment of money, unless it be such as has been loaned in the customary way, without express power from board of directors. Nor to purchase or sell the property of or create an agency for the bank. Id. Consult, also, Hallowell & A. Bank v. Hamlin, 14 Mass. 180; Hartford Bank v. Barry, 17 Mass. 94; Wild v. Bank of Passamaquoddy [Case No. 17,646]; Ridgway v. Farmers' Bank of Bucks County, 12 Serg. & R. 265; Stamford Bank v. Benedict, 15 Conn. 445; Ryan v. Dunlap, 17 Ill. 40; Fleckner v. Bank of U. S., 8 Wheat. [21 U. S.] 338; Bridenbecker v. Lowell, 32 Barb. 9; Bank of New York v. Farmers' Branch of the State of Ohio, 36 Barb. 332; Bank of Pennsylvania v. Reed, 1 Watts & S. 101; Payne v. Commercial Bank of Massachusetts, 6 Smedes & M. 24; Minor v. Mechanics' Bank of Alexandria, 1 Pet. [26 U. S.] 46.