FIRST NAT. BANK OF SUTTON, W. VA., et al. v. DROVERS' & MECHAN-
ICS' NAT. BANK OF BALTIMORE, MD.

(Circuit Court of Appeals, Fourth Circuit. July 12, 1917.)

No. 1504.

1. BANKS AND BANKING ⬤➡105(½)—AUTHORITY OF VICE PRESIDENT—USUAL
COURSE OF BUSINESS—ANTAGONISTIC INTEREST.

While the vice president of a bank intrusted with the general transac-
tion of its business has authority to bind it in any matter which in due
course of business falls under the authority of an executive officer of a
bank, yet if the transaction with him is so out of the usual course of busi-
ness as to put on notice the one dealing with him that he is using the
bank's name and credit in his own business, or that he is representing his
own or any antagonistic interest, he stands before the person dealing with
him stripped of his representative capacity, and powerless to bind the
bank.

2. BANKS AND BANKING ⬤➡105(½)—FRAUD OF VICE PRESIDENT—USUAL
COURSE OF BUSINESS—ANTAGONISTIC INTERESTS.

D., treasurer of F., a bank, as such applied to B., a bank, for a loan to
F., and on forged resolution of F.'s directors authorizing borrowing, B.
discounted note of D. to F. indorsed by D. in name of F., taking as col-
lateral a note indorsed by payee and another, then by D. individually,
and thereafter by him in the name of F. After F. had merged in N., a
bank which assumed certain of F.'s liabilities, but not the discounted note,
of which it did not know, D., who had become vice president of N., on
forged resolution of N.'s directors, authorizing payment in such manner,
procured B. to take in payment of the note a note of D. to N. indorsed
by him in its name, the discount being paid by check drawn by D. as vice
president to himself individually, and by him indorsed. Held, as regards
liability of N. on the substituted note, that the transaction was so out of
the usual course and so showed the antagonistic interests of D. as an in-
dividual and as treasurer of F. and as vice president of N. as to put B.
on notice.

In Error to the District Court of the United States for the Southern
District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Action by the Drovers' & Mechanics' National Bank of Baltimore,
Md., against the First National Bank of Sutton, W. Va., and its re-
ceiver. Judgment for plaintiff, and defendants bring error. Reversed.

Connor Hall and D. C. T. Davis, Jr., both of Charleston, W. Va.
(Davis, Davis & Hall, of Charleston, W. Va., on the brief), for plain-
tiffs in error.

Carlyle Barton, of Baltimore, Md., and V. L. Black, of Charleston,
W. Va., for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges, and DAY-
TON, District Judge.

WOODS, Circuit Judge. In January, 1914, H. H. Dean became vice
president of the First National Bank of Sutton, W. Va. In fraud
of the bank and for his own benefit he made his own note for $15,000
payable to the bank or order three months after date, and indorsed it
in the name of the bank to the Drovers' & Mechanics' National Bank
of Baltimore. The issue in this action brought by the Baltimore bank
is whether the First National Bank is liable as indorser notwithstand-

ing Dean's fraud. By consent the case was tried without a jury, and therefore the finding of the district judge in favor of the plaintiff must be affirmed if it has reasonable support in the evidence.

The surrounding details are somewhat complex, but the decision depends on the application of the law to a few leading facts not in serious dispute. Prior to the year 1914 Dean had no connection with the First National Bank, but was treasurer of the Farmers' Bank & Trust Company of Sutton, W. Va. On or about October 24, 1913, as treasurer, he applied to the Drovers' & Mechanics' National Bank of Baltimore for a loan to the Trust Company of $15,000. The Baltimore bank required a resolution of the board of directors authorizing the loan. In response Dean sent a copy of a resolution authorizing the borrowing of $30,000, bearing on its face the date December 29, 1913. This was in reality a resolution signed by the president and vice president in 1911, Dean altering the date to suit his purposes. The Baltimore bank agreed to make the loan, and discounted a note for $15,000 signed by Dean individually and indorsed by him in the name of the Trust Company, taking as collateral a note for $22,000 of J. V. Thompson and J. R. Barnes, payable to S. W. Shrader and indorsed by Shrader, Showalter, and Dean, and by Dean in the name of the Trust Company. The Baltimore bank, after applying $6,000 of the proceeds to a note of the Trust Company for that amount, credited the Trust Company with the balance and paid it out in due course on checks of the Trust Company. That this transaction was really a discount of his own note by Dean for his own benefit was shown by a credit made by Dean on the Trust Company's books to himself of the net proceeds of the note, $14,775, at the same time that he made a charge for that amount on the Trust Company's books to the Baltimore bank.

On January 15, 1914, a contract was made between the Trust Company and the First National Bank which was manifestly intended as a transfer of the business and assets of the Trust Company to the National Bank. By this contract the Trust Company turned over to the National Bank cash, notes, and other assets to the amount of $198,506.31. The National Bank assumed liability for the Trust Company's deposits, balances due to other banks, and certain notes to other banks to the amount of $203,970.02. For the difference, $5,464.-01, between the liabilities assumed and the assets turned over, the Trust Company gave its note to the National Bank. The face of the contract shows that the intention was that the Trust Company should be merged into the National Bank, the bank taking over the assets of the Trust Company and assuming its known liabilities. But the liabilities of the Trust Company assumed were carefully specified. The $15,000 note indorsed by the Trust Company to the Baltimore bank, not having been entered by Dean on the books of the Trust Company, was not known, and was not assumed nor mentioned. The evidence requires the inference also that the Thompson note for $22,000, indorsed by Dean in the name of the Trust Company as collateral for the $15,000 note, never appeared on the books of the Trust Company as an asset, and was not embraced in the notes assigned to the National Bank. As the National Bank never assumed the payment of the $15,000 note and never received any benefit of that note in its contract with

the Trust Company, this action would have no support if it depended on the contract of merger.

After the merger Dean became vice president of the National Bank, and the management of the business was left almost, if not entirely, in the hands of the vice president and his inferior officer, Casto, the cashier. Before maturity of the $15,000 note of Dean indorsed by the Trust Company, Dean agreed on demand of the Baltimore bank to procure a resolution of the board of directors of the National Bank authorizing the payment of the note by substitution of a new note of Dean indorsed by the National Bank. Dean, on March 24, 1914, wrote the Baltimore bank that the merger had been completed, and sent forward the new note signed by him individually and indorsed by him in the name of the National Bank, with a pretended copy of a fictitious resolution of the board of directors of that bank signed by him as secretary and certified by him as vice president. Relying upon this resolution, the Baltimore bank marked the old note paid and returned it, but retained the Thompson note as collateral. This transaction was handled through the note tellers' department, and did not appear in statements of account made in due course to the National Bank. A check for $225 on a New York bank was drawn by Dean as vice president in favor of Dean as an individual, and by him indorsed in payment of the discount. On maturity of this note on June 22, 1914, it was renewed in like form, and again the transaction appeared only on the discount ledger. The discount $225 was again paid by a check on the Baltimore bank drawn by Dean as vice president in his favor as an individual and indorsed by him. This check was charged in the account of the National Bank with the Baltimore bank, and no objection was made to it. But the check indicates that Dean paid for it, and there is nothing in the record tending to show that he did not.

From this statement it will be observed that the National Bank had nothing to do with the making of the debt which is the foundation of the note in suit; that it received no part of the consideration; that neither in the contract of merger nor in any other way did it assume the payment of the note; that Dean in all the transactions concerning it was acting in his own interest, and in fraud first of the Trust Company and then of the National Bank.

[1] Nevertheless, since Dean was intrusted with the general transaction of the business as vice president of the National Bank, he had authority to borrow money and bind the bank therefor by making or indorsing notes in its name and assigning its bills receivable as security in the usual course of business, and to bind the bank in any other matter which in due course of business fell under the authority of an executive officer of a bank. Auten v. United States National Bank, 174 U. S. 125, 19 Sup. Ct. 628, 43 L. Ed. 920; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611.

But, on the other hand, if the transactions here under review were so out of the usual course of business as to put the Baltimore bank on notice that Dean was using the bank's name and credit in his own interest, or that he was representing his own interest or any antagonistic interest, then he stood before the Baltimore bank stripped of

his representative capacity, and powerless to bind the National Bank. West St. L. S. Bank v. Shawnee County Bank, 95 U. S. 557, 24 L. Ed. 490; Lamson v. Beard, 94 Fed. 30, 36 C. C. A. 56, 45 L. R. A. 822; 7 Corpus Juris, 541.

The scope of banking business is constantly enlarging, and the usual course of business becoming broader. The number and rapidity of banking transactions require banks to rely on the authority and good faith of the executive officer of correspondent banks. But, on the other hand, the stockholders and directors of banks, especially small banks, must rely on the honesty of their executive officers, and they have a right to demand that other banks shall not blindly disregard plain evidences that a president or cashier is acting for himself or some other person while using the bank's name and credit.

[2] Taking the most liberal view in favor of the Baltimore bank, every transaction it had with Dean in relation to the $15,000 note was unusual; and all the transactions taken in connection carried an alarm which none but the heedless would disregard.

It has been held that a note of an officer to his own bank is presumed to be for value, and if nothing more appears it may be discounted for the bank on its own indorsement without question by another bank. Hiawatha Iron Co. v. John Strange Paper Co., 106 Wis. 111, 81 N. W. 1034. But here the Baltimore bank accepted Dean's note payable to the trust company, his own bank, and indorsed by him in the name of the bank, on the representation that he was thus making himself the primary obligor for the debt of the bank as a mere accommodation to the bank, though the bank itself was to become secondarily liable only as an indorser. The transaction was so out of the usual course that only the credulous would accept without inquiry Dean's false representation that the bank as indorser was to receive the entire benefit to the exclusion of himself as maker. The resolution of the board of directors, on which the date had been changed by Dean, authorizing a loan of $15,000, did not purport to sanction a transaction of this kind. Dean's personal interest in the loan was further evidenced by his individual indorsement of the Thompson note for $22,000 ahead of his indorsement of it in the name of the Trust Company.

Next, when the note fell due the Baltimore bank accepted Dean's statement without verification that the Trust Company had been merged into the National Bank, and inferred contrary to fact, without a direct statement to that effect even from Dean, that in the merger the National Bank had assumed the note of Dean indorsed by the trust company. But the bank itself recognized the necessity of having Dean's statements verified in a matter in which he was personally concerned, and it required a resolution of the board of directors of the National Bank as authority to protect it in renewal of the note with the indorsement of the National Bank. In sending his own note indorsed by him in the name of the National Bank to take up his old note, Dean wrote of his old note as "my note," and he inclosed a fictitious paper, in form a copy of a resolution of the board of directors of the National Bank authorizing him as vice president to borrow $15,-000 from the Baltimore bank. This pretended authority to borrow,

even if it had been genuine, by no means conferred authority on Dean to assume for the bank the liability of Dean and the Trust Company, and thus it did not even in form meet the requirement which the Baltimore bank thought necessary to bind the National Bank. But aside from that it was a forged resolution, and the Baltimore bank was content to accept as sufficient proof of its authenticity the pretensive certificate of Dean alone as vice president and as secretary of the board of directors. In addition to this, the check sent to the Baltimore bank for $225, the discount, was issued by Dean as vice president to Dean individually, and indorsed by him. Indeed, in all of its dealings about a note upon which Dean was personally liable the bank accepted without verification of any kind Dean's own statements that primary liability for the note had been assumed by the National Bank.

The case comes to this: As to the debt of $15,000, Dean appeared before the Baltimore bank representing three separate interests. As an individual maker of the note, he was interested that he should not be called on to pay it at maturity; as treasurer of the Trust Company, he was interested in having the Trust Company relieved of the indorsement; and as vice president of the National Bank, his duty was to see that the National Bank should not assume the liability of another without consideration. When these interests were evidently involved in antagonistic relations, the Baltimore bank cannot hold the National Bank bound by Dean's attempt to assume for it a debt for which it held the obligation of other parties in interest whom Dean attempted to represent. True, the National Bank in the conduct of its general business held Dean out as its agent, but the implied authority fell from him as soon as his antagonistic interest appeared.

The evidence does not support the position that the National Bank acknowledged liability for the overdraft of the Trust Company; but, even if it did, the assumption of that debt and its collection by the National Bank from the Trust Company did not warrant the inference that it had assumed all the debts of the Trust Company. On the contrary, the evidence shows that neither the board of directors nor any other officer had any knowledge of any of the transactions of Dean with the Baltimore bank in reference to his note for $15,000 until after the failure of the bank in August, 1914. It follows that the National Bank is not liable on the $15,000 note.

The counterclaim for the balance on the account current due the First National Bank by the Baltimore bank can only be allowed for the amount remaining after crediting the Rawson notes. It does not seem to be seriously questioned that these notes were taken in the regular course of business, and upon failure of the maker to pay the First National Bank was liable as indorser.

In passing on the issue of the liability of the First National Bank to the Baltimore bank, it has been necessary to state and comment upon the transactions of Dean while he was treasurer of the Trust Company, but, of course, we express no opinion concerning the liability of the Trust Company.

Reversed.