(December 7, 1923.)

THE STOCKMEN'S NATIONAL BANK, a Corporation, Respondent, v. THE FIRST NATIONAL BANK OF EMMETT, a Corporation, and C. A. WEST, Appellants.

[221 Pac. 150.]

CLAIM AND DELIVERY — BANKS AND BANKING — OFFICERS — VICE-PRESIDENT — EXTENT OF AUTHORITY — NEGOTIABLE PAPER — EXCHANGE—EVIDENCE.

1. A national bank is without authority to exchange negotiable paper owned by it for negotiable paper of another national bank.

2. An officer of a national bank cannot bind it by contracts or acts which are not within the scope of the business which the bank is authorized to transact.

3. It is error to admit in evidence a carbon copy of a letter where it is not shown by whom it was written, by whom it was received or what became of the original.

APPEAL from the District Court of the Seventh Judicial District, for Gem County. Hon. B. S. Varian, Judge.

Action in claim and delivery. Judgment for plaintiff. *Affirmed.*

Ezra R. Whitla and E. T. Knudson, for Appellants, cite no authorities on points decided.

J. P. Reed and Rhodes & Partridge, for Respondent.

The authenticity and genuineness of a letter may be established by the fact that it fits into an admitted course of correspondence, and constitutes an evident connecting link thereof. (*Maynard v. Bailey,* 85 W. Va. 879, 102 S. E. 480; 10 R. C. L. 1151.)

When an officer of a bank attempts to carry out any transaction beyond the ordinary range of the banking business, his authority to do so is not implied, and the bank is not bound in the absence of actual authority or subsequent ratification. (*First Nat. Bank v. Drovers' Nat. Bank,* 244 Fed. 135, 156 C. C. A. 563; *Bank of Commerce v. Hart,* 36 Neb. 179, 55 N. W. 631, 20 L. R. A. 780; Michie on Banks, pp. 721–724.)

Any scheme to violate sec. 5200, U. S. Rev. Stats., prohibiting excessive loans to one person, is *ultra vires,* and when any agent of a national bank seeks to make his bank an aid in carrying out such a scheme, he acts beyond all implied authority, and his bank may assert the *ultra vires* nature of the proposed transaction. (7 C. J. 833; *Concord First Nat. Bank v. Hawkins,* 174 U. S. 364, 19 Sup. Ct. 739, 43 L. ed. 1007.)

BUDGE, C. J.—This action is one in claim and delivery, involving eight promissory notes. From the record it appears that appellant discounted these notes to respondent in April, 1920, with the understanding that appellant bank would repurchase them upon demand. On May 22, 1920, respondent returned the notes to appellant bank, drew a draft for the amount thereof with interest and requested payment, which was refused, and the draft returned, ap-

pellant bank, however, retaining the notes. On June 5, 1920, respondent again drew a draft on appellant bank, payment of which was refused. On June 9, 1920, appellant forwarded three notes to G. A. Horal, who was president of the First National Bank of Fairfield and also vice-president of respondent bank, and at the same time drew on the Fairfield bank for the sum of $437.39, being the difference between the amount of the eight notes with interest and the three notes, the latter being sent to Horal in payment of the eight notes, pursuant to an alleged agreement between Horal and West. The three notes were returned to appellant bank by respondent on June 11, 1920, and demand was made for return of the eight notes. On June 16, 1920, respondent again drew on appellant bank for the amount of the eight notes with interest, but payment was again refused and on June 17, 1920, appellant bank advised respondent that it would not return the eight notes. Whereupon respondent bank commenced this action to recover the eight notes or their value in case delivery could not be had. The answer to the complaint was in effect a general denial. Upon the issues thus framed the cause was tried to the court, a jury being waived. Findings of fact and conclusions of law were made and filed and an alternative judgment rendered in favor of respondent for the recovery of the eight notes, or, in the event delivery could not be had, for the value thereof with interest, amounting to $9,675. From this judgment this appeal is taken.

We shall discuss only such errors as we deem necessary to dispose of this appeal. The first error assigned to which attention will be called relates to the action of the court in admitting Exhibit "H" over the objection of appellant. This exhibit is a carbon copy of a letter dated June 3, 1920, addressed to C. A. West, president of appellant bank. The evidence upon the trial fails to show by whom this letter was written, by whom it was received, or what happened to the original. It seems to have been found in the files of the respondent bank. Just how it got there is unexplained by any testimony. The showing was wholly insuffi-

cient to warrant its admission in evidence and it should have been excluded. However, in view of the facts as disclosed by the record, we are of the opinion that the admission of this exhibit did not constitute reversible error.

The serious question involved is whether Horal, as vice-president of respondent bank, had authority to accept the three notes and bind the bank to take them in exchange for the eight notes. It appears that for a period of approximately five years prior to the transaction here involved, in order to take care of excess loans, an understanding existed between Horal, as president of the Fairfield Bank and West as president of the appellant bank, whereby each bank took over the excess paper of the other. Six of the eight notes in question were excess loans of appellant bank, were held by the First National Bank of Fairfield and were sent by that bank to respondent bank, which purchased them, remittance being made to appellant bank. The remaining two notes were purchased directly from appellant bank by respondent. When respondent bank received the eight notes Horal represented to the directors that the appellant bank would take up the notes at any time upon demand, but that bank, instead of taking up the eight notes upon presentation and demand, addressed a letter to Horal individually, inclosing three other notes which it held as excess paper of the First National Bank of Fairfield, the face value of the three notes exceeding that of the eight notes with interest by the sum of $437.39. Appellant bank drew on the First National Bank of Fairfield for this excess amount, and sought to show upon the trial that it had an agreement with Horal as vice-president of the respondent bank, that he would accept in payment of the eight notes, the three notes held by it for the First National Bank of Fairfield. It is the contention of the respondent that no such understanding was had between Horal and West, and even if there had been such an understanding it was in excess of Horal's authority and that of the bank, was never ratified and was therefore not binding upon respondent. It is clear to our minds that the agreement between West and Horal

had reference to business between appellant bank and the First National Bank of Fairfield. This is shown by the correspondence between West and Horal and the further fact that appellant bank drew upon the First National Bank of Fairfield for the difference between the eight notes and the three notes, and that West had entirely forgotten that respondent bank had purchased the eight notes outright. So far as the latter bank is concerned, it had no transaction with appellant bank except the one involving the purchase of the eight notes and was under no legal obligation to carry out any arrangement between the First National Bank of Fairfield and appellant, by custom or otherwise. It had purchased the eight notes with the understanding on the part of its directors that the appellant would repurchase them upon demand and had no knowledge that it was carrying excess paper for the First National Bank of Fairfield. The three notes which were sent to appellant bank by the First National Bank of Fairfield bore Horal's indorsement. When they were forwarded to Horal in exchange for the eight notes they were not indorsed by West, which clearly shows that it was never West's intention that the three notes should be taken by the respondent bank in payment for the eight notes. When the eight notes were sent to appellant bank they were accompanied by a letter in which Horal expressly called upon it to take up the notes by draft and anticipated payment in cash. The exchange was evidently an afterthought on the part of Horal and West. The position of respondent bank in reference to the three notes is further emphasized in its letter of June 11, 1920, when it returned the three notes and demanded return of the eight notes, wherein, through its cashier, it made the following statement:

"We are not familiar with the transaction between your bank and Mr. Horal as outlined in your letter, and under no circumstances will we accept in payment for our notes the paper which you forwarded us on the 9th instant."

This also goes to show that respondent bank did not recognize or ratify any arrangement which Horal may have

had with reference to the exchange of the notes but shows that it expressly repudiated it.

Clearly it cannot be said that it is in keeping with or within the rules of legitimate banking that a vice-president, without the knowledge or consent of the board of directors, can exchange notes owned by the bank for notes of another bank, even if it be conceded that a national bank has such power. That it would seem to be without such power is evident from the provisions of U. S. Comp. Stats., sec. 9661, subd. 7, limiting the power of national banks. It is now settled that national banks may both take notes from borrowers and buy notes from other banking institutions, but it is not within their power to exchange notes as was sought to be done in this case. The power to negotiate promissory notes does not include the power to exchange. In our opinion the vice-president of respondent bank, even though exercising the executive power of the bank, had no authority to accept the three notes in payment of the eight notes.

As was said in the case of *Sandy River Bank v. Merchants & Mechanics' Bank,* Fed Cas. No. 12,309, 1 Biss. 146.

"When a party claims a discharge from a debt due the bank not by payment, but by giving other or different notes, bills or securities, which the cashier has agreed to take and release the debt, his authority, like that of any other agent, must be shown by proof. As a general rule, a jury have not a right to infer that the cashier of a bank, as such, has the authority to compromise and discharge debts without payment, or by taking other securities, but the authority from the bank must be shown expressly or by necessary implication, or it must exist and be established by the particular usage, or practice, or mode of doing business of the bank, or it must be ratified or acquiesced in by the bank, in order to be binding."

This same principle is applicable to any officer of a bank. Particularly is this true where it affirmatively appears that the officer was acting without authority of the board of directors with reference to the matter which was in excess of the bank's own powers and not within the range of

ordinary banking business. An officer of a national bank cannot bind it by contracts or acts which are not within the scope of the business which the bank is authorized to transact. (7 Corpus Juris, 784.)

In the case of *First National Bank v. Drovers & Mechanics' Nat. Bank,* 244 Fed. 135, 156 C. C. A. 563, it was held:

"While the vice-president of a bank intrusted with the general transaction of its business had authority to bind it in any matter which in due course of business falls under the authority of an executive officer of a bank, yet if the transaction with him is so out of the usual course of business as to put on notice the one dealing with him . . . . that he is representing his own or any antagonistic interest, he stands before the person dealing with him stripped of his representative capacity, and powerless to bind the bank."

West, as president of the appellant bank, knew, or was bound to know, that Horal, in exchanging the three notes for the eight notes, was acting in excess of his authority and in excess of the power of the bank, and therefore could not bind respondent bank. The fact that West was president of a national bank emphasizes his knowledge of Horal's powers.

From what has been said it follows that the judgment of the trial court should be affirmed, and it is so ordered. Costs are awarded to respondent.

McCarthy, William A. Lee and Wm. E. Lee, JJ., concur.

Dunn, J., concurs in conclusion reached.